Ackart agt. Lansing.

# COURT OF APPEALS.

### DAVID ACKART, appellant, agt. GILBERT V. LANSING and GEORGE H. LANSING, respondents.

#### *Contributory negligence.*

Whether the plaintiff was guilty of contributory negligence in standing in front of a circular saw in motion are questions of fact for the jury upon the facts stated.

It is the duty of saw-mill owners so to provide it with customary or available machinery and appliances as that it should be reasonably free from a likelihood to accident.

The plaintiff was not bound to give his instructions to the principal, and it was not a voluntary or needless act to pass by the principal and enter the mill to give instructions to the practical agent.

*Decided December,* 1874.

APPEAL by the plaintiff from a judgment rendered by the general term of the supreme court setting in the third department, affirming a judgment of nonsuit ordered by Mr. Justice JAMES at the Saratoga circuit, January, 1873.

*R. A. Parmenter,* for appellant.

The defendants owned and operated a saw-mill at Stillwater, and one Ford was their sawyer in the mill. They were doing custom work and invited the plaintiff specially to bring his logs to their mill for sawing, and he did so in the month of February, 1871.

Afterward, and on the 28th of February, 1871, the plaintiff went to the mill for the purpose of giving some directions about the sawing of his logs. He found Ford, the sawyer,

and both defendants at the mill. On making his business known to the sawyer, the latter informed the plaintiff that if he would help them they would immediately draw his logs upon the log-way and saw them. The plaintiff complied with that suggestion and his logs were accordingly placed on the log-way. The plaintiff had two sorts of logs, chestnut and pine, thirteen feet long. The sawyer and one of the defendants were engaged in sawing an oak log about ten feet long. They had taken off the slab, and that lay unfastened on the top of the log, and the circular saw was cutting a plank from the log and straight-edging the loose slab at the same time. The carriage upon which the log lay was some fifteen inches from the floor of the mill. There were rollers to catch the plank, as fast as sawed; but for a log of this length the second roller was not near enough to the first one to catch the plank. Just after the saw had started the plaintiff stepped back into the mill the second time, fifteen or twenty feet distant from the saw and about three feet to the left of the range of and in front of the saw, for the purpose of giving the sawyer specific directions as to the manner in which he wanted the pine logs sawed. The saw being in motion, as before stated, and causing some considerable noise, the plaintiff remained in his position a few moments in order to deliver his message to the sawyer. The sawyer was then standing by the side of the saw, the plaintiff being some eighteen feet behind him, and the defendant, Gilbert V. Lansing, stood at the other end of the log. Before the saw had run clear through, Lansing took hold of the loose plank that was being straight-edged and raised it up; and in doing so the saw caught the other end of the plank and whirled it violently in the direction of the plaintiff. It struck the plaintiff and broke his leg.

A similar occurrence had taken place at this mill a few days previously to the knowledge of the defendant, Gilbert V. Lansing, who alluded to it immediately after the plaintiff had been injured. The defendants claimed that the cause of

the injury was the fact that the rollers were not rightly placed — being too far apart for that log. It would have been easy to have placed the rollers nearer together. They should have been placed so as to catch any length of log sawed. The true cause of the injury was, doubtless, this: Mr. Lansing, in taking hold of one end of the loose plank carelessly, caused the other end of it to be caught in the saw. The identical plank was produced in court and it showed the saw had caught it. When the plaintiff first went into the mill the saw was not running, but when he returned to give specific directions as to sawing one log the saw had been started. Ackart was not cautioned by any one not to enter the mill.

. At the close of the plaintiff's testimony the defendants' counsel moved for a nonsuit on four grounds. The plaintiff's counsel requested the court to submit to the jury, for their determination, every question of fact involved in the issue, but the court declined to do so and directed a nonsuit.

I. A nonsuit is never proper when questions of fact are involved, unless a verdict for the plaintiff would be set aside as against evidence upon some fact necessary to be established on behalf of the plaintiff; and, in the consideration of such a question, the defendant must concede every fact and conclusion which the evidence, fairly construed, conduces to establish against him and in favor of the plaintiff. At the circuit the court was specially requested by the plaintiff's counsel to submit to the jury, for their determination, every question of fact involved in every branch of the issue.

II. The evidence tended to show negligence on the part of the defendants. The jury might, with propriety, have found that it was negligence to straight-edge with a circular saw a loose plank in no manner held or secured, except by its own weight; and especially to so handle the plank as to cause it to be caught by the saw in motion and thrown against a customer of the mill who was rightfully, and without objection, there on business.

III. It was the duty of the defendants to so manage their saw-mill as not to endanger the life or limb of their customer. Not only were they bound to run the mill with prudence and care, in respect to all persons not trespassers or guilty of negligence, but they were in duty bound to properly construct the machinery and apparatus by which the mill was managed.

" The owner or lessee of a dock, pier or wharf receiving tolls for its use is bound to keep it in reasonably good condition so that, as far as by the use of ordinary care, diligence and skill he can make it so, it shall be fit for the use of vessels and safe for all persons to enter upon who have a right of access. If the wharf owner receives tolls from the public generally he owes this duty to the public, and is liable to any one specially injured by his neglect to fulfill it " (*Shearman & Redfield on Negligence* [2d ed.], § 585 ; *Pittsburgh* agt. *Grier*, 22 *Penn. State R.*, 54 ; *Kendall* agt. *Baxter*, 12 *Gray*, 494 ; *White* agt. *Phillips*, 15 *Com. Bench* [*N. S.*], 245 ; *Buckbee* agt. *Brown*, 21 *Wend.*, 110 ; *Radway* agt. *Briggs*, 37 *N. Y. Rep.*, 256 ; *Driscoll* agt. *Newark Lime, &c., Co.*, 37 *N. Y.*, 637).

The principle of these decisions is decisive of the case at bar.

IV. No opinion was delivered at the general term of the court below, but it seems the nonsuit was sustained on the ground that the plaintiff was himself guilty of contributory negligence. He certainly did nothing which, in the least degree, interfered with the working of the mill. The only thing done by him was to step under the roof of a custom saw-mill, eighteen feet distant from the saw when the log being sawed was each successive moment receding from him. And he was there without objection or warning, and for the legitimate purpose of giving specific instructions as to the manner in which he desired the sawyer to cut up one of his logs. This was not necessarily contributory negligence; and if it tended (which I deny) in that direction, the question

should have been submitted to the jury as requested by the plaintiff's counsel. Contributory negligence is peculiarly a question of fact for the jury; and it must be a very clear case of contributory negligence, appearing upon uncontradictory evidence, which will justify the withholding of that question from the jury. That has been held repeatedly by this court (*See Albany Law Journal, vol.* 8, *pp.* 125, 189, 350; *Vol.* 9, *pp.* 190, 309).

The judgment should be reversed and a new trial granted, with costs to abide the event.

*E. F. Bullard*, for respondent.

At the time the plaintiff went back to the mill the second time he had no occasion to do so, as one of the proprietors stood in the yard near by him to whom he could have given any desired instructions.

Instead of doing so he passed by the principal and went to the servant where the accident happened.

He knew the proprietors, and that Ford was only a servant.

I. In going back the second time the plaintiff was a mere volunteer.

The nonsuit was therefore properly granted.

II. There was no conflicting evidence, and hence no fact for the jury (*Tinney* agt. *Boston & Albany R. R. Co.*, 52 *N. Y.*, 632).

III. The defendants did not owe the plaintiff any duty when he went back the second time (*Harty* agt. *R. R. Co.*, 42 *N. Y.*, 468, 472).

IV. Even if they did owe a duty to the plaintiff, "such care only is required as a man of ordinary prudence and capacity may be expected to exercise in the same circumstances" (*Unger* agt. *Forty-second St. R. R. Co.*, 51 *N. Y.*, 497).

In *Spencer* agt. *Campbell* (9 *Watts, and Ser.* 32), a man

Ackart agt. Lansing.

drove a horse to the defendant's steam grist-mill to get some grist which he had ground, and while there the boiler exploded and killed the horse.

*Held*, the defendant was not liable without proof of actual negligence.

" The utmost possible care is not required. Indeed, its exercise would require an extent of time and caution that would terminate half of the business of the world " (*Loop* agt. *Litchfield*, 42 *N. Y.*, 361).

The turnpike, wharf and pier cases cited by the plaintiff's counsel have no application to the case at bar. A pier, wharf or turnpike is made on purpose for travel. The owner or proprietor is bound to have them in good repair.

The saw-mill is not made to be run by the public; the latter have a right to demand that their lumber be properly manufactured, but the mill owner owes them no other duty.

V. The plaintiff is precluded from recovering by his own acts.

Plaintiff is not free from blame in going back the second time, as there was no occasion for it. By so doing he, without cause, and for no purpose, and carelessly, places himself in position to receive the injury (*Van Shaick* agt. *H. R. R. Co.*, 43 *N. Y.*, 527).

The plaintiff was guilty of gross negligence in placing himself directly in front of the saw, where he was sure to be injured if any accident happened. He might as well stand in front of a cannon while being loaded.

" One cannot recover for an injury, even for gross negligence in the lawful use of another's property, unless he is free from culpable negligence on his part " (1 *Cow.*, 78).

VI. There was no proof of negligence on the defendants.

The judgment should be affirmed, with costs.

FOLGER, *J.*— I do not think that the plaintiff was properly to be termed a volunteer; he certainly was not a trespasser. Having property in the charge of the defendants, at

their solicitation to be worked upon by them and for their profit, he had the privilege of going upon their premises to see to it and to give directions concerning it. He was not chargeable with negligence in going upon their ground. Nor was it a voluntary or needless putting himself in the way of danger to go into the mill, there to give instructions to the practical agent of the defendants, the sawyer, and when there, to await quiet for that purpose, unless he had reason to expect the accident which occurred, or some result like unto it, or unless the circumstances, as shown by the testimony, were such as that a man of ordinary prudence and care for personal safety would, in the exercise of due caution, have refrained from so going and so awaiting.

The circumstances do not show a case of negligence so clear as that a court could, as matter of law, pronounce the plaintiff guilty of contributory negligence.

The least which the plaintiff was entitled to ask was a submission of that question to the jury, upon all the facts of the case.

The defendants, owning the mill and themselves carrying on a business, dependent for its profit to them upon the resort to it of their neighbors with their logs, owed a duty to their customers that the mill and its appliances should be reasonably safe for those who had right or license to come into it for a mutual purpose (see *Swords* agt. *Edgar*, *in MSS.*, *decided Nov.* 17, 1874). It was their duty to arrange and carry it on, so to provide it with customary or available machinery and appliances as that it should be reasonably free from a likelihood to accident and injurious effects.

The testimony given did, then, present questions of fact for a jury; whether the plaintiff was hurt by a plank thrown against him, whether it was so thrown by the act of Gilbert V. Lansing, combining with the action of the saw upon the plank, or whether it was thrown by reason of the rollers being too far apart to carry so short a plank; whether such result had happened before to the knowledge of the

defendants; whether they were thereby chargeable with notice that they were likely to happen again; whether they arose from want of skill or from carelessness in the use of the gearing and appliances of the mill in actual use, or were the necessary and customary effect of the use thereof; whether they were thus unavoidable, or might have been avoided by greater and required care, or by the use of other and better appliances in the mill, which could at reasonable cost and convenience be obtained, and whether, on the consideration and determination of these inquiries, the defendants were, in fact, the negligent cause of the injury to the plaintiff?

These questions of fact should have been submitted to the jury with proper instructions as to the law governing their determination.

I do not assert that there was negligence in the defendants, but the lack of it was not so absolutely clear as that the court could pass upon it as a matter of law. There was a question for a jury. Hence, the judgment should be reversed, a new trial granted, with costs to abide event.

All concur, except CHURCH, Ch. J., absent.

NOTE.—This case was retried at the Saratoga circuit, January 27, 1875, before Hon. JOSEPH POTTER and a jury, and resulted in a verdict of $500 in favor of the plaintiff, and a second appeal has been taken.